A02A1237. GRANT v. THE STATE.
(570 SE2d 597)

JOHNSON, Presiding Judge.

A jury found Harvey Grant guilty of simple battery. He appeals, alleging the trial court improperly limited his closing argument, the state improperly placed the burden of persuasion on him, and the trial court erred in denying his request for mistrial after the state questioned him about prior arrests. Because each of these enumerations of error lacks merit, we affirm Grant's conviction.

Viewed in a light most favorable to support the verdict, the evidence shows that Grant and the victim lived together. On July 17, 2001, the victim's father picked her up between 5:00 and 5:30 p.m. to attend a funeral. They returned between 9:15 and 9:30 p.m. Subsequently, Grant and the victim argued about a truck which had allegedly turned around in the driveway earlier that day and about Grant's feelings about the victim's infidelity. Grant then left the house.

Shortly after 1:00 a.m., Grant returned to the house. He told the victim he wanted to talk, but the victim smelled alcohol on his breath and told Grant, "You've been drinking and you're high, we'll talk later." She knew something was about to happen because of her past experiences with Grant. Grant denied he had been drinking while he was out with his friends and testified that the victim was angry and accused him of being unfaithful.

At this point, Grant's version of the incident differs from the victim's version. According to the victim, Grant grabbed her hand and yelled at her for trying to call the police. He then punched her under

---

[9] See *Gentry v. State,* 236 Ga. App. 820, 821-822 (1) (513 SE2d 528) (1999).

her left eye, and a ring on his finger cut her face, causing severe bleeding and a permanent scar. The victim retaliated by throwing keys at Grant. Grant grabbed the victim, turned her around, and slapped her on the face. Subsequently, the victim got out of the house and called police on her cell phone.

According to Grant, the victim was the aggressor. She threw her keys at him, hitting him in the face and cutting him. At that point, Grant pushed the victim on the bed, and the victim struck him with the keys. Then the victim threw an ashtray at Grant, which missed and broke against a wall. The victim grabbed a large piece of the glass and cut Grant on the arm with the glass. After a struggle, the victim ran outside and called police. Once police arrived, both parties were questioned and arrested.

1. Grant contends the trial court improperly limited his closing argument by refusing to allow him to comment on the state's failure to call the arresting police officer. We find no abuse of discretion.

We agree that Grant had the right to comment on the state's failure to call witnesses where the jury was presented with evidence that the missing witnesses had "knowledge of facts relevant and material to the case."[1] Here, however, there was no evidence that the officer who responded to the scene had any knowledge relevant or material to Grant's case. The record shows that the officer responded to the scene, spoke with Grant and the victim at the scene, and arrested both parties. There was no evidence or testimony that the officer did any independent investigation other than listening to both parties at the scene. Both the victim and Grant testified at trial regarding what occurred at the scene and what they told the officer. Because there was no showing that this missing witness had information relevant to the facts of this case, the trial court did not abuse its discretion in prohibiting this line of argument.[2]

2. Grant contends that during closing argument, the state placed the burden of proof on him:

State: . . . you've got two versions of the story. When you go back in that room, you can only accept one because that you have to decide for yourself based on the credibility, as [Grant's attorney] said. You have to determine if that man sitting right there is more credible than [the victim]. And that you have to believe that everything he's saying was the truth to you that day in order for you to find him not guilty.
Defense Attorney: Your Honor, I — I object. That's a mis-

---

[1] *Morgan v. State*, 267 Ga. 203, 206-207 (3) (476 SE2d 747) (1996).
[2] See *Dennis v. State*, 226 Ga. App. 390, 391 (2) (486 SE2d 656) (1997).

statement of the law. They do not have to believe the Defendant's story in order to acquit him.

Court: Well, now, the jury will make the decision about what the facts in the case and the evidence presented has been sufficient to convince them beyond reasonable doubt of the guilt of the Defendant. Go ahead.

While this comment during closing argument did address Grant's credibility, it did not shift the burden of proof to Grant. In fact, Grant's attorney admitted during closing argument that if the jury believed the victim, then they had to believe Grant was lying.

During closing argument, counsel may make inferences and ask the jury to look at such inferences even if the inferences are illogical, unreasonable, or absurd.[3] In the present case, the jury was presented with two different versions of the incident. Both the state and Grant argued that the other party lacked credibility. The trial court instructed the jury about the credibility of witnesses on two separate occasions, once before the commencement of testimony and once after the conclusion of the evidence and closing arguments. And, the trial court properly instructed the jury on the burden of proof after closing arguments. We find no reversible error.

3. Grant argues that the trial court erred in overruling his objection and request for mistrial when the state questioned him about prior arrests. During cross-examination, Grant was asked the following:

State: . . . you were going to jail?
Grant: Yeah, automatically, any time it's a domestic like that, you're going to jail.
State: Okay.
Grant: So might as well go put my pants on and sit on the car and wait. I don't want no problem.
State: I got you. Okay. And you know that because of what?
Grant: I know that because of experience, family — I mean, other friends getting into it, family. I know it from — I know it from those.
State: Would it be from the prior times you've been arrested for that?

Grant claims this last question asked him about prior arrests and the fact that he knew police protocol, not merely prior difficulty between Grant and the victim. We disagree. The line of questioning clearly referred to domestic abuse arrests, and the jury was already aware

---

[3] *Morgan,* supra at 203-204 (1).

that Grant had prior altercations with the victim and had been arrested for battery against the victim on one occasion.

On appeal, we will not disturb a trial court's ruling on a motion for mistrial absent an abuse of discretion.[4] Given the abundance of prior difficulty evidence before the jury, it is highly unlikely that the jury was confused by the state's question about Grant's prior "arrests." There simply was no other evidence of any bad character before the jury. The trial court did not abuse its discretion in overruling Grant's objection and denying his motion for mistrial.

*Judgment affirmed. Blackburn, C. J., and Miller, J., concur.*

DECIDED AUGUST 16, 2002 —
RECONSIDERATION DENIED SEPTEMBER 5, 2002 — 

*Rodney A. Williams*, for appellant.

*Gwendolyn R. Keyes, Solicitor-General, Rupal D. Vaishnav, Assistant Solicitor-General*, for appellee.

---

[4] See *Arnold v. State*, 249 Ga. App. 156, 161 (3) (545 SE2d 312) (2001).